CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

6/14/2022
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| Tonya M.[1], ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action No. 6:21-cv-17 |
| ) | |
| KILOLO KIJAKAZI,[2] Acting Commissioner ) | |
| Social Security Administration, ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Tonya M. ("Tonya") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1381f, §§ 401–433.  Tonya alleges that the Administrative Law Judge ("ALJ") erred by failing to explain her conclusion that Tonya can concentrate, persist and maintain pace to perform unskilled work for two-hour increments during an eight-hour workday; by failing to discuss relevant evidence relating to Tonya's physical impairments; and by failing to properly evaluate her subjective allegations. I agree that the ALJ's decision does not adequately explain her analysis of the record and how she arrived at her conclusions. Accordingly, I **RECOMMEND GRANTING in part** Tonya's Motion for

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

Summary Judgment (Dkt. 11), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. 16), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court's review is limited to determining whether substantial evidence supports the Commissioner's conclusion that Tonya failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

also <u>Monroe v. Colvin</u>, 826 F.3d. 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted). In <u>Mascio</u> and <u>Monroe</u>, the court remanded because the ALJ failed to adequately explain how he arrived at conclusions regarding the claimant's RFC. <u>Mascio</u>, 780 F.3d at 636, <u>Monroe</u>, 826 F.3d. at 189. Similarly, I find that remand is appropriate here because the ALJ's opinion fails to explain how she analyzed Tonya's medical records and subjective complaints and arrived at the RFC.

## CLAIM HISTORY

Tonya filed for SSI and DIB in April 2018, alleging disability beginning on March 31, 2018, due to arthritis, asthma, heart attack, high blood pressure, anxiety, depression, nerve root compression, pinched nerve, stroke, bipolar disorder, a knee problem and schizophrenia. R. 206–17, 234, 242.

Tonya filed previous claims for SSI and DIB in November 2008, April 2012, and March 2015. These claims were denied by ALJ decision. <u>See</u> R. 59–74, 83–94, 103–17. Tonya's prior disability decisions determined that she had severe impairments of digestive disorders and mental disorders (2008 decision, R. 62); degenerative joint disease in the left knee, polysubstance abuse, affective disorder and anxiety disorder (2012 decision, R. 85); and osteoarthritis, mood disorder, anxiety disorder, personality disorder and history of substance abuse (2015 decision, R. 105). All three prior decisions restricted Tonya to light work with simple, routine, repetitive tasks; with additional limitations in 2015 of postural restrictions,

sustained concentration towards tasks for 2-hour segments, and occasional public contact. R. 69, 87, 108.

The state agency denied Tonya's current fourth claim at the initial and reconsideration levels of administrative review. R. 151–68. On October 7, 2020, ALJ Suzette Knight held a hearing to consider Tonya's claim. R. 27–55. Counsel represented Tonya at the hearing, which included testimony from vocational expert Robert Lester. On October 19, 2020, the ALJ entered her decision analyzing Tonya's claims under the familiar five-step process[4] and denying her claim for benefits. R. 12–21.

The ALJ found that Tonya suffered from the severe impairments of loss of speech, depression and anxiety. R. 15. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 16–17. The ALJ concluded that Tonya retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: occasionally talk; can communicate simple information; able to understand, remember, concentrate, persist and maintain pace to perform unskilled work in two hour increments during an eight hour day; able to occasionally interact with supervisors, co-workers, and the public; and able to tolerate few changes in a routine work setting. R. 17.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that Tonya is unable to perform her past relevant work as a caregiver, but can perform other work in the national economy, such as hand packager, classifier, and addresser. R. 20. Thus, the ALJ determined that Tonya is not disabled. Tonya appealed the ALJ's decision, and the Appeals Council denied her request for review on February 12, 2021. R. 1–6. This appeal followed.

## ANALYSIS

Tonya asserts that the ALJ failed to support her finding that Tonya can concentrate, persist and maintain pace for two-hour increments during an eight-hour workday. Tonya also asserts that the ALJ ignored evidence in the record regarding Tonya's distractibility and sustained concentration and failed to sufficiently consider records regarding her GERD and irritable bowel syndrome and the impact of those conditions on her functional capacity. I agree that the ALJ's decision leaves the court to guess at how she reached her conclusions regarding Tonya's RFC.

### I.   Medical History

The relevant period before the ALJ is limited to July 2018 through September 30, 2018 for Tonya's DIB claim, and March 31, 2018 through October 19, 2020 for her SSI claim. R. 15, 242. Tonya has very few medical records during these time periods. The ALJ recognized that Tonya had limited medical treatment during the relevant period, at least in part, because of financial difficulties and an inability to drive. R. 18.

On August 15, 2017, Tonya was examined by dentist Martin W. Fritz, DDS, who noted her medical history of anxiety disorder, degenerative joint disease of the knee, gastroesophageal

reflux disease, Lap Nissen[5] procedure in July 2014, a history of involuntary hospitalizations and cholecystectomy. R. 328.

Tonya's records with the University of Virginia Health System reflect that she called on May 12, 2017, complaining of diarrhea. R. 339, 348. Tonya noted increased abdominal pain, blood in her stool and said she was "not able to work all work." R. 348. Tonya was also seen by Minton Cooper, M.D., the same day for foot pain, and complained of diarrhea. R. 347. She was diagnosed with synovitis of the 2nd MTP joint. Dr. Cooper recommended a metatarsal pad and taping of the second toe. Id.

On May 17, 2017, Tonya saw Michael McCabe, M.D., complaining of fluctuating bowel habits.  She reported fecal urgency that caused her to pull over while driving and defecate in someone's yard.  She also stated that she works at Wendy's and her manager told her she cannot work with diarrhea.  Dr. McCabe noted that Tonya's diet is poor, she does not eat adequate fiber, and she drinks a fair amount of sugary beverages.  Tonya was previously seen for GERD with esophagitis, had a Lap Nissen procedure in October 2013, and hiatal hernia status post cholecystectomy. R. 344.  Dr. McCabe's impression was that Tonya has fluctuating bowel habits consistent with IBS-mixed picture. R. 345.  He discussed lifestyle modifications and various strategies to help control her symptoms. He also discussed that her upper GI symptomatology is related to her Lap Nissen procedure, leading to decreased gastric accommodation and discussed eating small meals. Dr. McCabe recommended supplemental soluble fiber, taking Miralax on days when she cannot produce a bowel movement, taking Imodium with loose stools, stopping sugary beverages, increasing dietary fiber, and undergoing a surveillance colonoscopy. Id.

---

[5] A Lap Nissen procedure refers to a laparoscopic anti-reflux surgery for GERD, where a surgeon wraps the top of the stomach around the lower esophagus after reducing the hiatal hernia, if present, to reinforce the lower esophageal sphincter, making it less likely that acid will back up in the esophagus. See https://www.mayoclinic.org/diseases-conditions/gerd/multimedia/gerd-surgery/img-20006950.

Tonya called the office on May 22, 2017 and asked that Dr. McCabe write a letter completely excusing her from work due to multiple daily episodes of diarrhea. R. 344. She reported that she stopped drinking sweet drinks and is keeping a diary of her food intake. She reported having diarrhea. Id.

On July 5, 2017, Tonya called and reported "significant stomach discomfort" such that her "stomach is up under my rib bone," and asked to discuss with the doctor. R. 344. Tonya called back a few hours later the same day crying, screaming in pain, and demanding to be seen. She was instructed to come to the emergency room for evaluation. R. 342.

In early December 2017, Tonya called several times complaining of abdominal pain, vomiting, bloating, belching, black/blood stools for six months and foul-smelling stool. She was given a new prescription and recommended to make an appointment with a primary care provider. R. 341–42. In March 2018, Tonya called complaining of rectal bleeding and spitting up blood for 2-3 years. She was recommended to visit the emergency room. R. 341.

Tonya sought treatment with Suzanne Paul, NP, at Central Virginia Health Services on January 22, 2018, and April 10, 2018. R. 318–25. In January, Tonya requested an STD screening, and reported that she was abused by her husband. R. 323. She appeared "very agitated, tearful and upset, acting erratically in office, speech slurred at times (pt reports new dentures." Id. In April, Tonya followed up for kidney stones and a urinary tract infection. R. 318. She was admitted to the hospital a few days prior for sepsis secondary to a urinary tract infection and ureteral stone. Tonya also complained of an acute change in her speech for the past four days. Tonya was positive for opiates, benzodiazepines, THC and amphetamines. Id. Upon examination, Tonya was alert, well developed, well nourished, in no acute distress, and her speech appeared forcefully slurred. She was diagnosed with pyelonephritis, episode of change in

7

speech, depression with anxiety, and elevated platelet count. R. 319. She was prescribed medication for the pyelonephritis, sent for a head CT scan regarding the change in speech, and referred for evaluation of her depression and anxiety. Id. The CT scan was normal. R. 349.

In May 2019, Tonya visited the Lynchburg General Hospital Emergency Department for an abscess, acute kidney injury and abdominal pain. R. 360. She was referred to follow up with surgical specialists within two weeks. R. 362.

On March 5, 2020, Tonya followed up with Kenneth Swanson, NP, with Johnson Health Center, for concerns about her speech. R. 377. Tonya presented as confused with severe speech problems. Mr. Swanson noted,

> Hospital records show constipation as reason for visit, also mentions appt with nephrology. Hospital neurology assessment is normal which is difficult to understand given pt's bizarre presentation. She reports being pistol whipped 3 years ago leaving her in this condition. She is contradictory stating that she is homeless then stating that she lives in a shack on her father's farm. She drove herself here today.

R. 377. Upon examination, Tonya was well nourished, but disheveled, emotionally labile, and crying. Id. She had apparent spasticity of head and mouth causing speech difficulties. Mr. Swanson assessed speech disturbance and bipolar 1 disorder and referred Tonya to neurology and psychiatry. Id.

Tonya returned on March 10, 2020, for a consult with Kim Steger, LPC, regarding her emotional lability. Tonya noted that she had high stress response, confusion, mood swings, racing thoughts, suicidal ideation, increased isolation, crying spells, irritability, panic attacks and reported abdominal discomfort. R. 375. Upon exam, Tonya was alert, her mood was unstable, she was disheveled and agitated, her speech was garbled, her thought process was difficult to follow, and she had limited insight. Tonya pressed Ms. Steger's hand to her abdomen to feel the "blockage" and on her face to feel indents from a 9mm. She moved around the room

unexpectedly and excitedly. She reported living in a shack in the woods and using a bucket for her toilet. Ms. Steger assessed bipolar 1 disorder. Id.

On May 13, 2020, Tonya presented with complaints of elevated blood pressure, a potential ear infection, bad nerves and bleeding with bowel movements. R. 373. She was difficult to understand with rambling thoughts, tearful and slurred speech. She asked for Xanax to get her head straight, and repeatedly mentioned rectal bleeding. Her aunt also spoke on the phone validating the rectal bleeding. Mr. Swanson diagnosed bipolar 1 disorder and rectal bleeding. He discussed importance of Tonya going to the emergency room. R. 374.

At the administrative hearing, Tonya reported that she lives in a shed on her father's property. She previously drove to the grocery store or doctor's appointments but stopped driving because she didn't have money to pay the taxes or insurance on her vehicle. R. 37. She stated that she doesn't read much due to a learning disability and forgets what she is reading and must go back and forth to understand. R. 38. Tonya reported that she had a stroke and has trouble remembering things. R. 43. She complained of kidney problems that cause her to use the bathroom a lot, and irritable bowel syndrome that causes her to defecate on herself. R. 44. She also stated that her bipolar disorder prevents her from getting along with people, and she gets irritated quickly. R. 45. Tonya stated that she has trouble with depression and getting out of bed every day, and also that she stopped taking all the mediations she was prescribed. R. 46. She reported doing her laundry, cooking microwave dinners, going to the grocery store once a month, and previously going to church. R. 48–49.

## II. ALJ Decision

The ALJ determined that Tonya had severe impairments of loss of speech, depression and anxiety. R. 15. The ALJ briefly noted Tonya's subjective complaints that she is unable to work

due to kidney issues, irritable bowel syndrome, multiple recent strokes, difficulty comprehending things, getting along with people, trusting others and has low energy. R. 18. The ALJ also noted that Tonya has no issues with personal care, she prepares her own meals, can perform simple household chores and is able to drive, shop, manage her finances and go to church. Id.

The ALJ noted that there is limited medical evidence in the record for the period at issue and recognized that Tonya asserted significant financial difficulties. The ALJ spent a total of four sentences discussing Tonya's medical treatment, as follows:

> The record reflects that the claimant received follow-up treatment after a hospitalization in March 2018, where she was treated for sepsis and noted to have developed a speech abnormality from no known cause. The record also indicates that the claimant received treatment for an abscess, an acute kidney injury, and abdominal pain in May 2019, but there are no treatment notes relating to this visit in the record. Additionally, there are additional visits for acute conditions in March and May 2020, at which time the claimant displays significant psychiatric abnormalities, including confusion, mood swings, racing thoughts, suicidal and homicidal ideation, crying spells, panic attacks, and severe speech problems. Beyond these treatment records, the medical evidence consists of telephone contacts, incomplete treatment records, and a medical file on the claimant without any notes from actual treatment visits.

R. 18 (internal record citations omitted).

The ALJ found these medical records inconsistent with severe impairments. The ALJ noted that the record reflects ongoing mental impairment limitations and a chronic speech impairment. The ALJ determined that Tonya's speech impairment causes communication limitations and contributes to Tonya's interaction limitations, and that her depression and anxiety cause her understanding, concentration, and adaptation limitations, and contribute to her interaction limitations. R. 18.

The ALJ found that Tonya's statements regarding recent strokes are not supported by the evidence, and that the records "do not establish any chronic bowel or kidney conditions during the period at issue." R. 18–19.

The ALJ reviewed the 2015 ALJ decision limiting Tonya to light work with occasional postural activities; simple, routine tasks; sustain concentration in two-hour segments; occasionally interact with co-workers and supervisors as needed; have no more than occasional public contact; and respond appropriately to changes in a routine work setting. The ALJ found the opinion "somewhat persuasive." R. 19. The ALJ explained that the "the mental impairment findings are generally consistent with the medical evidence of record, but not persuasive as to the claimant's exertional, postural, and environmental limitations, as the medical evidence of record does not establish any impairments that would affect physical functioning." R. 19.

The ALJ reviewed the opinions of four state agency physicians, all of whom found insufficient evidence to establish whether Tonya has any severe medically determinable impairments. R. 19. The ALJ disagreed, finding the evidence at the hearing level sufficient to establish that Tonya has severe speech impairments and severe impairments of depression and anxiety. Id.  The ALJ thus concluded that Tonya can perform a full range of work at all exertional levels; can occasionally talk, can communicate simple information; can understand, remember, concentrate, persist and maintain pace to perform unskilled work in two-hour increments during an eight-hour day; can occasionally interact with supervisors, co-workers and the public; and can tolerate few changes in a routine work setting. R. 17.

### III.    Discussion

The ALJ is required to provide a sufficient explanation in her decision to allow this court to conduct a meaningful review of the RFC determination. The ALJ fulfills this duty with "a narrative discussion describing how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which 'build[s] an accurate and logical bridge from the evidence to [its] conclusion.'" Neville v. Berryhill, No. 6:16-CV-6, 2017 WL

3909735, at *4 (W.D. Va. Aug. 22, 2018) (quoting Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often)).

Further, in Mascio v. Colvin, the Fourth Circuit clarified the ALJ's duty of explanation to adequately review the evidence and explain the disability decision. 780 F.3d at 636. The ALJ has the responsibility to address the evidence of record that supports her conclusions and ensure that the hypothetical presented to the vocational expert includes all limitations set forth in the RFC. The failure to make this connection means "the analysis is incomplete and precludes meaningful review." Monroe, 826 F.3d at 190.

Here, the ALJ's decision fails to thoroughly review Tonya's records and explain how she analyzed and arrived at the RFC. The ALJ's analysis of Tonya's medical treatment, impairments and resulting limitations is at best, sparse. As noted above, the ALJ summarized Tonya's medical records in four sentences. While Tonya's medical records are minimal, the ALJ's summary of the records in general categories, such as "the medical evidence consists of telephone contacts, incomplete treatment records, and a medical file on the claimant without any notes from actual treatment visits," does not provide a detailed review of Tonya's complaints, the treating physician's notes, and the overall severity of her conditions.

For instance, many of the treatment notes based on telephone contacts reflect Tonya's ongoing complaints of severe diarrhea and other bowel issues and concerns. However, regarding Tonya's digestive issues, the ALJ stated,

> [t]here is also some indication that the claimant may have gastroesophageal reflux disease ("GERD"), and that she recently received a stent placement in connection

12

with a ureteral stone. However, there is little indication of any ongoing symptoms from either of these conditions during the period at issue, as the record contains one follow-up after a hospitalization in April 2018 and no significant medical records information pertaining to treatment between April 2018 and March 2020. Under the circumstances, the undersigned finds that the claimant's GERD and prior ureteral stone are not severe impairments during the period at issue.

R. 15. The ALJ later stated, "the claimant's treatment records do not establish any chronic bowel or kidney conditions during the period at issue." R. 19.

These statements are contradicted by the medical records. Tonya's records reflect consistent, ongoing complaints of abdominal pain, rectal bleeding, and uncontrolled diarrhea. R. 339, 341, 344, 348, 360, 373, 374. Indeed, Tonya reported to her physicians that she lost her job at Wendy's in 2017 because of her uncontrolled diarrhea, and her diarrhea caused her to be ticketed in 2017 for defecating in a stranger's yard.[6] R. 344. Tonya's chronic bowel issues are also documented by Tonya's diagnoses by treating physicians of GERD, irritable bowel syndrome, and her previous Lap Nissen procedure. It is simply incorrect to say there is "little indication of ongoing [GERD] symptoms" during the period at issue, or that Tonya's records "do not establish any chronic bowel" conditions. A thorough review of the minimal records in this case reflect that Tonya consistently complained of chronic bowel conditions. Accordingly, the court cannot determine whether the ALJ properly concluded that Tonya's bowel conditions did not rise to the level of severe impairments, because the ALJ did not thoroughly review the records and explain how she arrived at her conclusions.

The ALJ also provided an insufficient explanation regarding how the RFC adequately accommodates Tonya's moderate limitations with understanding, remembering, and applying information; interacting with others; concentration, persistence and maintaining pace; and

---

[6] While these particular records are dated before the relevant period in this case, they provide background and shed light as to the severity of Tonya's chronic bowel condition.

adapting or managing herself. The ALJ recognized that Tonya had moderate limitations in these areas and determined that Tonya's depression and anxiety are severe impairments but provided minimal analysis as to how these conditions are accommodated by the RFC. The ALJ noted that the record reflects ongoing mental impairments, "particularly during the claimant's treatment visits in 2020, as well as a chronic speech impairment beginning at her follow- up in April 2018." The ALJ then immediately concluded, "[a]ccordingly, with deference to the claimant the undersigned finds that the claimant's speech impairment causes the communication limitations noted above and contributes to her interaction limitations, and that the claimant's depression and anxiety cause the noted understanding, concentration, and adaptation limitations, and contribute to her interaction limitations." R. 18. The ALJ does not provide an explanation as to how she determined that Tonya's moderate mental impairments are accommodated by restrictions to performing unskilled work in two-hour increments; occasional interaction; occasional talking and communicating simple information. The ALJ's conclusory interpretations of Tonya's medical records without more pointed analysis, does not fulfill her duty to explain how she arrived at the RFC.

Further, the ALJ gave no weight to the state agency opinions, the only medical opinions in the record. The ALJ gave some weight to the 2015 ALJ decision but does not explain why she found it "not persuasive as to the claimant's exertional, postural, and environmental limitations," aside from "the medical evidence of record does not establish any impairments that would affect physical functioning." R. 19. The ALJ does not sufficiently explain why she found that Tonya can perform work at all exertional levels, despite three prior ALJ decisions limiting Tonya to light work.

Overall, the ALJ's analysis of Tonya's treatment history and allegations is insufficient to build the required logical bridge between the objective and subjective evidence of Tonya's impairments and the ALJ's RFC determination. The ALJ's opinion insufficiently reviews and examines the medical records and provides inadequate analysis of the record for the court to sufficiently review her findings. The ALJ did not provide the court with a road map as to how she arrived at her determination of Tonya's limitations. Without this analysis, I am left to mine the record for facts to support the ALJ's conclusions and essentially fill in the blanks the ALJ left in her analysis.  This I cannot do.  The record may well contain evidence support the ALJ's conclusions, but it is the responsibility of the ALJ to set out the evidence (with an adequate explanation) in her opinion.

## **CONCLUSION**

For the reasons set forth above, I **RECOMMEND** entering an order **DENYING** the Commissioner's motion for summary judgment, **GRANTING in part** Plaintiff's motion for summary judgment, and **REMANDING** this case to the Commissioner.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such

objections, including the waiver of the right to appeal.

Entered: June 14, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge